UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TODD CHOQUETTE,

    Plaintiff,

v.                                           CASE NO. 8:17-cv-2506-T-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on May 18, 2016, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from January 1, 2005, the alleged disability onset date, through August 29, 2016, the date of the decision.[2] (Tr. 33-47, 82-117, 285, 289.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15.)

[2] Plaintiff had to establish disability on or before September 30, 2009, his date last insured, in order to be entitled to a Period of Disability and DIB. (Tr. 35.)

1

I. Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

II. Discussion

Plaintiff argues that the ALJ erred in her evaluation of the opinions of Dr. Jacques Lamour, a consultative examiner, and Dr. Efren Baltazar, a State agency

non-examining physician. Specifically, Plaintiff asserts that it is unclear from the administrative decision whether the ALJ rejected Dr. Lamour's opinion regarding standing and walking limitations, whether the ALJ mischaracterized or misinterpreted this opinion, and/or whether the ALJ substituted her opinion for the medical opinions in the record, including Dr. Baltazar's opinion. Plaintiff explains:

> If it was [the ALJ's] intent to determine that [Dr. Lamour] opined that the claimant could both stand and walk four hours each, in an 8 hour workday, this was clearly not his opinion. If it was [the ALJ's] intent to reject that part of [Dr. Lamour's] opinion, this was not clear in the decision, nor did she give an adequate reason[] for rejecting the opinion.

(Doc. 23 at 7.) As to Dr. Baltazar, the ALJ gave his opinion great weight, but apparently did not incorporate the opinion regarding standing and/or walking limitations into the RFC assessment and hypothetical question to the vocational expert ("VE"). Plaintiff states that if the ALJ had adopted Dr. Baltazar's opinion, there is a reasonable probability that the VE would have testified that Plaintiff could not perform the job of housekeeper, which requires standing and/or walking the entire work shift. Defendant responds that substantial evidence supports the ALJ's assessment of the opinion evidence and her finding that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.

At step two of the five-step sequential evaluation process, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease,

3

polysubstance abuse, obesity, and depression. (Tr. 37.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work,[3] except:

> [T]he claimant can occasionally lift and/or carry up to twenty pounds; and frequently lift and/or carry up to ten pounds. The claimant can sit for six hours in an eight-hour workday; stand for four hours in an eight-hour workday; and walk for four hours in an eight-hour workday. Additionally, the claimant can push and/or pull as much as he can lift and/or carry. The claimant can occasionally climb ramps and stairs; he can occasionally climb ladders, ropes, or scaffolds; and he can occasionally balance, stoop, kneel, crouch, and/or crawl. The claimant can also have frequent exposure to unprotected heights, moving mechanical parts, and vibration. Moreover, the claimant can perform simple, routine tasks. He can maintain attention, concentration, persistence, and pace in two-hour increments throughout an eight-hour workday, with normal work breaks. The claimant can have occasional interaction with supervisors, coworkers, and the public, but cannot do fast paced or strict quota based work.

(Tr. 41.)

In making this finding, the ALJ discussed, *inter alia*, Plaintiff's subjective

---

[3] "The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position. 'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, *the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.* Sitting may occur intermittently during the remaining time." SSR 83-10 (emphasis added).

4

complaints, the objective medical findings, the treatment records, Dr. Lamour's February 2014 consultative examination, and Dr. Baltazar's September 2014 Physical RFC Assessment. (Tr. 41-45.) The ALJ addressed Dr. Lamour's examination as follows:

> Consultative physical examiner, Dr. Lamour, opined that the claimant was not in need of an assistive device. (Ex. 4F-3). He further found that the claimant could stand and walk up to four hours due to his back problem. Dr. Lamour opined that the claimant could sit up to six hours. He further opined the claimant could lift and carry up to 50 pounds occasionally and 25 pounds frequently. Dr. Lamour found that the claimant could climb, balance, stoop, kneel, crouch, and crawl up to 2 ½ hours. Dr. Lamour concluded that the claimant had no significant physical limitations or restrictions. (Ex. 4F-5). The undersigned accords partial weight to this opinion. Much of Dr. Lamour's findings are consistent with the medical evidence of record, which reveals less physical limitation than alleged by the claimant. However, the record does show more limitation than opined by Dr. Lamour. In particular, the most recent MRI reveals that the claimant is more limited, and might have difficulty performing medium and/or heavy exertional level work. (Ex. 14F). Consequently, the undersigned accords partial weight to this opinion.

(Tr. 44-45.)

The ALJ also discussed Dr. Baltazar's Physical RFC Assessment, as follows:

> Dr. Baltazar opined that due to the claimant's degenerative disc disease, and back pain with radiation into his bilateral lower extremities, the claimant could perform less than the full range of light exertional work. He found that the claimant had no manipulative limitations, but some environmental limitations[,] such as avoiding concentrated exposure to vibration and hazards. Dr. Baltazar opined the claimant had some postural limitations as well, such as occasionally climbing ramps and/or stairs. He also opined the claimant could occasionally climb ladders, ropes, or scaffolds; he

5

could frequently balance; and occasionally stoop, kneel, crouch, and crawl. (Ex. 6A). The undersigned accords great weight to the opinion of the State agency consultant, as it is consistent with the medical evidence of record, which shows less limitation than alleged by the claimant.

(Tr. 44.)

The Court agrees with Plaintiff that the ALJ's evaluation of the medical opinion evidence warrants a remand. On February 15, 2014, Dr. Lamour performed a consultative examination of Plaintiff, which revealed, *inter alia*, a positive straight leg raising test at a 60-degree angle, bilaterally, in the seated and supine positions. (Tr. 489-92.) Dr. Lamour diagnosed chronic back pain, secondary to degenerative disk disease, and uncontrolled hypertension. (Tr. 491.) Under Functional Assessment/Medical Source Statement ("MSS"), the doctor opined, in relevant part:

> *Maximum standing and walking capacity can go up to four hours due to back problem.*
> Maximum sitting capacity can go up to six hours.
> Assistive device: None needed.
> Maximum lifting and carrying capacity can go [up to] 50 pounds occasionally and 25 pounds frequently.
> Postural activities: Climbing, balancing, stooping, kneeling, crouching, and crawling can go up to 2-1/2 hours.

(Tr. 491-92 (emphasis added).)

The ALJ gave "partial weight" to Dr. Lamour's opinion. (Tr. 45.) The ALJ explained that "[m]uch of Dr. Lamour's findings [were] consistent with the medical evidence of record, which reveal[ed] less physical limitation than alleged by the

6

claimant," but the record, including the most recent MRI, did "show more limitation than opined by Dr. Lamour." (*Id.*)

The ALJ's statements quoted above imply that the ALJ intended to impose *greater* restrictions on Plaintiff's ability to stand and walk than assessed by Dr. Lamour. However, it seems that the opposite happened here, as the ALJ determined that Plaintiff could stand for four hours total and walk for four hours total in an eight-hour workday. Even assuming that the ALJ correctly interpreted Dr. Lamour's opinion as restricting Plaintiff to four hours of standing *and* four hours of walking in an eight-hour workday (as opposed to standing and/or walking for four hours *total* in an eight-hour workday), this interpretation seems inconsistent with the ALJ's finding that Plaintiff could perform *less* than the full range of light work, which by definition, "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.[4]

Defendant argues that even assuming that the ALJ's RFC assessment is inconsistent with Dr. Lamour's limitations for walking and standing for fours hours total, "this can be attributed to the fact that the ALJ gave only partial weight to Dr. Lamour's opinion." (Doc. 27 at 6.) Despite Defendant's invitation to do so, the Court cannot assume that the ALJ gave partial weight to Dr. Lamour's opinion as to standing and walking, particularly since the ALJ seemed to reject Dr. Lamour's

---

[4] A full range of medium work also "requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10.

opinion to the extent it indicated an ability to perform "medium and/or heavy exertional level work." (Tr. 45.) Standing and/or walking for four hours total in an eight-hour workday does not qualify for medium and/or heavy exertional level work. See SSR 83-10. As such, it is unclear whether the ALJ misinterpreted Dr. Lamour's opinion regarding standing and walking limitations, whether the ALJ rejected that opinion, or whether the ALJ simply substituted her opinion for the medical opinions in the record, including Dr. Baltazar's opinion.

Dr. Baltazar opined, in relevant part, that Plaintiff could stand and/or walk for a total of six hours in an eight-hour workday. (Tr. 195.) The ALJ acknowledged Dr. Baltazar's opinion that Plaintiff could perform a reduced range of light work and gave it "great weight," as it was "consistent with the medical evidence of record, which show[ed] less limitation than alleged by the claimant." (Tr. 44.) However, the ALJ neither accounted for the standing and walking limitations assessed by Dr. Baltazar nor rejected his opinion. Thus, the Court can only speculate as to whether the ALJ properly considered the opinion evidence from Dr. Baltazar.

Based on the foregoing, the Court cannot conclude that the ALJ's RFC determination is supported by substantial evidence in the record. Thus, this case will be remanded with instructions to the ALJ to re-consider the opinions of Dr. Lamour and Dr. Baltazar, explain what weight they are being accorded, and the reasons therefor. In light of this conclusion and the possible change in the RFC

8

assessment, it is unnecessary to address Plaintiff's arguments regarding the ALJ's step-five findings. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ: (a) re-consider the opinions of Dr. Lamour and Dr. Baltazar, explain what weight they are being accorded, and the reasons therefor; (b) to re-evaluate Plaintiff's RFC assessment, if necessary; and (c) to conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on March 19, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record